UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE APPLICATION OF DR. HELEEN MEES,

                                   Applicant,

For Leave to Issue Subpoenas for the Taking of a Deposition
and the Production of Documents Pursuant to 28 U.S.C. § 1782

No. 14 Misc. 0088-P1

ECF Case

## RESPONDENT WILLEM H. BUITER'S MEMORANDUM OF LAW IN FURTHER OPPOSITION TO THE APPLICATION OF DR. HELEEN MEES FOR LEAVE TO ISSUE SUBPOENAS PURSUANT TO 28 U.S.C. § 1782

KATSKY KORINS LLP
605 Third Avenue
New York, New York 10158
(212) 953-6000

Of Counsel:   Adrienne B. Koch

-and-

QUIRK AND BAKALOR, P.C.
1325 Franklin Avenue Plaza – Suite 250
Garden City, New York 11530
(212) 319-1000

Of Counsel:   Timothy J. Keane

*Attorneys for Respondent Willem H. Buiter*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT _____ 1

ARGUMENT _____ 3

    I.   MEES'S APPLICATION IS INCONSISTENT WITH THE "TWIN AIMS"
        OF § 1782 _____ 3

    II.  EACH OF THE *INTEL* FACTORS WEIGHS AGAINST THE APPLICATION _____ 5

        A.  Buiter's Status As A Party To The Dutch Suit Weighs Against The Application ____ 5

        B.  The Fact That Mees Is Attempting To Circumvent The Discovery Rules Of Two
            Other Courts Further Weighs Against The Application _____ 6

            1.  The Application Represents An Attempt To Circumvent The New York Court's
                Ruling On Discovery _____ 6

            2.  The Application Represents An Attempt To Preempt A Ruling From The Dutch
                Court On Discovery _____ 7

        C.  The Cumulative, Duplicative And Unduly Burdensome Nature Of The Discovery
            Mees Seeks Further Weighs Against The Application _____ 8

        D.  The Nature And Character Of The Proceedings Currently Underway Abroad
            Weighs Against Granting The Application _____ 11

    III. ANY DISCOVERY SHOULD BE LIMITED AND RECIPROCAL _____ 12

CONCLUSION _____ 13

# TABLE OF AUTHORITIES

**Page**

*Cases*

*Ahmad Hamad Algosaibi & Bros. v. Standard Chartered Intern. (USA) Ltd.*,
785 F. Supp.2d 434 (S.D.N.Y. 2011) .......................................................................... 13

*Aventis Pharma v. Wyeth*, No. M-19-70, 2009 WL 3754191 (S.D.N.Y. Nov. 9, 2009) .......... 5

*Brandi-Dohrn v. IKB Deutsche Industriebank Bank, AG*, 673 F.3d 76 (2d Cir. 2012) .......... 3

*Certain Funds, Accounts, and/or Investment Vehicles v. KPMG, L.L.P.*, ___ F.3d ___,
2015 WL 4939544 (2d Cir. Aug. 20, 2015) .................................................................. 12

*In re Application of OOO Promnefstroy*, No. M 19-99(RJS), 2009 WL 3335608
(S.D.N.Y. Oct. 15, 2009) ............................................................................................ 4, 6, 8

*In re Edelman*, 295 F.3d 171 (2d Cir. 2002) ........................................................................ 3

*In re Harbour Victoria Inv. Holdings Ltd.*, No. 15-MC-127, 2015 WL 4040420 (S.D.N.Y. June
29, 2015) ..................................................................................................................... 7

*In re Hörler*, 799 F. Supp. 1457 (S.D.N.Y. 1992) .............................................................. 7

*In re Kreke Immobilien KG*, No. 13 Misc. 110(NRB), 2013 WL 5966916 (S.D.N.Y Nov. 8,
2013) ......................................................................................................................... 6, 7

*In re Malev Hungarian Airlines*, 964 F.2d 97 (2d Cir. 1992) ............................................ 12

*In re Mare Shipping*, No. 13 Misc. 238, 2013 WL 5761104 (S.D.N.Y. Oct. 23, 2013),
*aff'd*, 574 Fed. Appx. 6 (2d Cir. 2014) ...................................................................... 6, 7

*In re Microsoft Corp.*, 428 F. Supp.2d 188 (S.D.N.Y. 2006) ............................................. 7

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ............................. passim

*Lufthansa Technik AG v. Astronics Corp.*, 553 Fed. Appx. 22 (2d Cir. 2014) .................. 7

*Mees v. Buiter*, 793 F.3d 291 (2d Cir. 2015) ............................................................... passim

*Statutes*

28 U.S.C. § 1782 ......................................................................................................... passim

N.Y. CPLR 3106(a) ........................................................................................................... 10

## TABLE OF AUTHORITIES (cont'd)

**Page**

N.Y. CPLR 3211(a)(1) .................................................................................... 6

N.Y. CPLR 3214(b) ....................................................................................... 6

*Rules*

Fed. R. Civ. P. 26(b)(1) .................................................................................. 4

Fed. R. Civ. P. 26(b)(2)(C) ...................................................................... passim

*Treatises*

44A N.Y. Jur.2d Disclosure § 234 ................................................................. 10

Respondent Willem Buiter ("Buiter") submits this supplemental memorandum of law in further opposition to the application of Heleen Mees ("Mees") to take discovery from him pursuant to 28 U.S.C. § 1782 (the "Application").

## PRELIMINARY STATEMENT

Having been directed to inform the Court of "any relevant changed circumstances" since it initially denied her Application, Mees submitted a brief that reveals *almost none* of the circumstances material to the discretionary analysis this Court must now make. Of particular significance, in the lawsuit Mees brought against Buiter in New York state court for the same alleged wrongs that underlie her Dutch lawsuit, (a) she asked the state court to grant her the same discovery she now seeks here; and (b) that court denied her application and specifically ordered that no discovery may take place until it rules on Buiter's motion to dismiss her claims on the merits (and to sanction her and her counsel). (*See* Exhs. 2, 6-7).[1] She is now asking this Court to countermand that ruling of the state court whose jurisdiction she herself invoked. Her brief does not disclose that ruling, which is a key element of the "relevant changed circumstances."

Similarly, on October 2 the Dutch court will hear Mees's application for the same discovery and Buiter's application to stay the Dutch action. (*See* Kortmann Decl. ¶¶ 2-3 and Exhs. 11-13). Mees is thus also asking this Court to preempt the Dutch court's ruling. This is a significant part of the "relevant changed circumstances," but is nowhere mentioned in her brief.

Nor does Mees tell this Court that the primary basis for Buiter's motion to dismiss in the state court – and for that court's determination that no further discovery should take place until that motion is decided – is his submission of over 2,500 emails from Mees (and six from him) that (a) a computer forensics expert has certified constitute *all Buiter has* of the parties'

---

[1] References to "Exh. __" are to the exhibits to the accompanying declarations of Adrienne B. Koch ("Koch Decl.") and Jeroen Kortmann ("Kortmann Decl."). The exhibits to those declarations are numbered in a single sequence for ease of reference.

communications for a period of roughly a year before Mees's arrest for stalking and harassing him; and (b) collectively put the lie to Mees's claim that she was not guilty of those crimes. (*See* Exh. 3). She similarly neglects to tell the Court that a week and a half ago she received over 1,500 pages of documents in response to a subpoena (the "Citi Subpoena") to Buiter's employer, Citigroup Inc. ("Citi") – representing all responsive documents that could reasonably be expected to exist with respect to most of the items of the subpoenas she now seeks to serve on Buiter. (*See* Koch Decl. ¶ 3 and Exh. 9). Thus, what she is asking for is now either duplicative or (at best) cumulative – a critical "changed circumstance" that she also fails to disclose.

Against this backdrop, each of the factors that this Court must now consider weighs against the Application. It does not serve the "twin aims" of the statute because it is neither efficient nor equitable (Point I), and each of the other considerations that the Supreme Court described in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004), militates against discovery here (Point II). The Court can and should deny the Application on this basis.

But we submit as a threshold matter that under the Second Circuit's mandate in this case the Court need not even get that far. In its decision, that court stated: "if a § 1782 application is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application *in toto*". *Mees v. Buiter*, 793 F.3d 291, 302 n.18 (2d Cir. 2015) (citation and internal quotations omitted; italics in original). On this basis, it unambiguously advised this Court that "[t]o the extent that [this Court] finds that Mees already possesses the materials sought in her application, that might support a determination that the application has the purpose of harassment or seeks cumulative . . . materials." *Id.* (citation and internal quotations omitted; alteration in *Mees*). Here, Mees did not even disclose that she already has most of what she now seeks, let alone explain why she needs more than what she

2

has. This failure separately supports a denial of her Application, either in the Court's discretion under § 1782 or pursuant to Fed. R. Civ. P. 26(b)(2)(C).

## ARGUMENT

### I. MEES'S APPLICATION IS INCONSISTENT WITH THE "TWIN AIMS" OF § 1782

With respect to § 1782's "twin aims" – "1) providing *equitable and efficient* means to assist parties engaged in international litigation and, by so doing, 2) inviting foreign countries to provide similar assistance to our courts" (*In re Edelman*, 295 F.3d 171, 181 (2d Cir. 2002), emphasis added) – Mees's Application falls flat. Contrary to her apparent assumption, the question before this Court with respect to those "aims" is *not* how most efficiently to give Mees the discovery she seeks. Rather, the Court is directed to determine the most "equitable and efficient means to assist the parties."[2] What Mees is seeking is neither equitable nor efficient.

Mees has sued Buiter based on the same alleged facts in two separate courts on opposite sides of the Atlantic. Each of those courts has its own discovery mechanisms, each of them has jurisdiction over Buiter and Mees and has the ability to direct them to produce discovery, and each of them is best suited to determine how such discovery should proceed with respect to the claims that are before it. Mees has asked each of those courts to direct Buiter to produce discovery. One of them (the New York state court) denied that request, ordering discovery stayed pending a determination of Buiter's motion to dismiss Mees's claims on the merits. The other one (the Dutch court) is scheduled to hear her application on October 2. Now, apparently based on a fear that her Dutch application might also be denied, Mees asks this Court – where

---

[2] *Accord, e.g., Brandi-Dohrn v. IKB Deutsche Industriebank Bank, AG*, 673 F.3d 76, 80 (2d Cir. 2012) (§ 1782's "goals" are "to provide *equitable* and efficacious discovery procedures in United States courts for the benefit of tribunals and litigants involved in litigation with international aspects . . . and to encourag[e] foreign countries by example to provide similar means of assistance to our courts") (emphasis added; citations and internal quotations omitted; alteration in *Brandi-Dohrn*).

she has *no* substantive claim pending – to render that application moot by granting the discovery itself. Mees thus seeks to use the discovery procedures of this Court to sidestep the limits that have been (in the New York action) or may soon be (in the Dutch action) placed on discovery by the courts in which she herself has initiated suit. The efficiency of this, she claims, is "[c]lear[]" – simply because both she and Buiter live in New York. (Mees Br. at 4).

In fact, what is clear is exactly the opposite. Of all the courts in which she has brought proceedings against Buiter, this Court is the only one that Mees has not called upon to rule on the merits of her claims. It is therefore the *least* equipped to determine (among other things) whether the discovery she seeks is "relevant to any party's claim or defense" (*see* Fed. R. Civ. P. 26(b)(1)), "unreasonably cumulative or duplicative" (*see* Fed. R. Civ. P. 26(b)(2)(C)(i)), or likely to produce a burden that will outweigh its benefit (*see* Fed. R. Civ. P. 26(b)(2)(C)(iii)). For this reason, this Court is the *least* efficient place for discovery to proceed.[3]

Of equal importance, Mees is suing Buiter abroad even though both parties live in New York, even though the conduct of which she complains occurred here, and even though she is *also* suing him in New York. This is not efficient, and it is not equitable. It is harassment. Even if the discretionary analysis could leave any doubt that the discovery Mees now seeks is not appropriate (and we do not see how it can), we submit that the harassing nature of the multiple proceedings she has brought would tip the scale against her and warrant a denial of the Application. *See Mees*, 793 F.3d at 302 n.18 ("if a § 1782 application is made in bad faith, for

---

[3] *See In re Application of OOO Promnefstroy*, No. M 19-99(RJS), 2009 WL 3335608, *10 (S.D.N.Y. Oct. 15, 2009) (denying § 1782 application seeking discovery for use in a Dutch proceeding, where applicant had unsuccessfully sought the same material in the Dutch court:"this Court would not provide 'efficient means of assistance' to litigants by giving parties an incentive, after losing in their original requests for information in the foreign tribunal, to rush to the United States in hopes of obtaining a second bite at the apple," and "ordering [such] discovery would not 'encourage foreign countries by examples,' unless that example is to aid litigants in circumventing the judicial systems of foreign countries").

the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application *in toto*") (citation and internal quotations omitted).

In all events, Mees should have to live with the consequence of her own forum choices – that is, discovery in her New York action under the rules of the New York state court, and discovery in her Dutch action under the rules of the Dutch court. It would be neither equitable nor efficient for this Court to reward her gamesmanship with a *third* bite at the discovery apple.[4]

## II. EACH OF THE *INTEL* FACTORS WEIGHS AGAINST THE APPLICATION

Like the statute's "twin aims," the four other factors that the Supreme Court directed the lower courts to consider in making a discretionary determination under § 1782 weigh against Mees's Application. We address each of those factors below in turn.

### A. Buiter's Status As A Party To The Dutch Suit Weighs Against The Application

When Mees first came to this Court, the parties disputed whether or not she could seek discovery from him in the Netherlands because she had not yet commenced suit there. Now that she has done so, it is undisputed that Buiter is a party to the Dutch action and is subject to discovery there.[5] Under *Intel*, this weighs against the Application. *See* 542 U.S. at 264 ("when the person from whom discovery is sought is a participant in the foreign proceeding, the need for § 1782 (a) aid generally is not as apparent as it ordinarily is when evidence is sought from a

---

[4] *See, e.g., Aventis Pharma v. Wyeth*, No. M-19-70, 2009 WL 3754191, *1 (S.D.N.Y. Nov. 9, 2009) (denying § 1782 request, in part because documents sought were within the "jurisdictional reach" of the French court that was the designated forum in the parties' forum selection clause: "Regardless of whether Aventis could have gotten the French Courts to compel production of the documents now sought, Aventis' motion is clearly an attempt to circumvent foreign proof gathering restrictions that were contractually provided for by the parties[] in the choice of forum (France) clause. . . . These sophisticated parties freely chose the French forum with all its requisite procedural rules.").

[5] Although Buiter has objected to Mees's request for discovery in the Dutch proceeding, the basis for his objection is *not* a claim that the Dutch court lacks jurisdiction over him. Contrary to Mees's assertion (Mees Br. at 6), our position has always been that any discovery for the Dutch proceeding should take place in the Dutch courts. (*See* Exh. 12 at 72).

5

nonparticipant in the matter arising abroad").[6]

### B. The Fact That Mees Is Attempting To Circumvent The Discovery Rules Of Two Other Courts Further Weighs Against The Application

The *Intel* Court also made clear that a discretionary denial of a § 1782 request would be appropriate if the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *See* 542 U.S. at 264-65. Here, the facts that Mees chose *not* to tell this Court make clear that her Application now represents an attempt to circumvent the judicial determinations of *both* of the courts in which she has actually sued Buiter. These facts weigh against the Application as well.

#### 1. The Application Represents An Attempt To Circumvent The New York Court's Ruling On Discovery

Despite Mees's attempt to wish them away by not revealing them to the Court, the developments in her state court action against Buiter strongly militate against her Application. In particular: (a) because Buiter duly moved to dismiss that action on the merits (based, among other things, on documentary evidence – *see* N.Y. CPLR 3211(a)(1)), discovery there is stayed as a matter of statute (*see* N.Y. CPLR 3214(b)); (b) she asked the state court to lift that stay so that she could take the discovery she now seeks here; and (c) in response to her motion (and after oral argument), the state court entered an order expressly directing that no discovery may

---

[6] *Accord, e.g., In re Mare Shipping Inc.*, No. 13 Misc. 238, 2013 WL 5761104, *5 (S.D.N.Y. Oct. 23, 2013) (denying § 1782 application, in part because the party from whom discovery was sought was "the opposing party in the Spanish action"), *aff'd sub nom. Mare Shipping Inc. v. Squire Sanders (US) LLP*, 574 Fed. Appx. 6 (2d Cir. 2014) (Summary Order); *In re Kreke Immobilien KG*, No. 13 Misc. 110(NRB), 2013 WL 5966916, *5 (S.D.N.Y Nov. 8, 2013) (denying § 1782 application, in part because, as the respondent (Deutsche Bank) was the parent company of a participant in the foreign proceeding, "the notion that Deutsche Bank could somehow be a nonparticipant in the foreign action is untenable"; because "there is no allegation that any document requested here is beyond the reach of [the foreign court's] jurisdiction. . . . the first discretionary factor weighs strongly in favor of denying the application"); *Promnefstroy, supra*, 2009 WL 3335608 at *7 ("Because the Court concludes that nearly all of the documents that the subpoena seeks are also in the possession of parties to the foreign proceeding, the first factor weighs squarely in favor of [the respondent].").

proceed until Buiter's motion to dismiss is decided. (*See* Exhs. 2, 6-7). Mees is now seeking a different determination from this Court, in which Mees makes no substantive claim.

It was *Mees* who first invoked the New York court's jurisdiction to decide her claims, and *Mees* who asked that court to rule on her application for discovery. In response, that court made clear that no discovery may proceed until it decides Buiter's motion to dismiss her claims. This Court should not use its discretionary powers to enable her to circumvent that court's order. Rather, it should deny the Application.[7]

### 2. The Application Represents An Attempt To Preempt A Ruling From The Dutch Court On Discovery

Developments in the Dutch proceeding that Mees fails to reveal similarly cut against her here. As noted above, on October 2 the Dutch court will hear her motion for discovery. Mees is thus trying to hedge against the possibility that the Dutch court might deny that motion. Contrary to Mees's characterization, the Second Circuit did not rule that such circumstances should be given no weight at all; it merely counseled against giving such circumstances "undue weight." *Mees*, 793 F.3d at 303. These circumstances plainly weigh against the Application.[8]

---

[7] *See In re Harbour Victoria Inv. Holdings Ltd.*, No. 15-MC-127, 2015 WL 4040420, *7 (S.D.N.Y. June 29, 2015) (finding that the "circumvention" factor weighed against an application where, as here, the foreign proceeding was "a mirror image of an ongoing U.S. proceeding" in which the judge had denied the discovery sought); *accord In re Hörler*, 799 F. Supp. 1457 (S.D.N.Y. 1992) (dismissing § 1782 application, based on principles of abstention, where similar discovery was being (or would likely be) sought in parallel proceeding in New York Surrogate's Court) (cited with approval in *Lufthansa Technik AG v. Astronics Corp.*, 553 Fed. Appx. 22, 23 (2d Cir. 2014) (Summary Order)).

[8] *See, e.g., In re Microsoft Corp.*, 428 F. Supp.2d 188, 195-96 (S.D.N.Y. 2006) (denying § 1782 application based in part on the pendency of the applicant's request for the same information in the foreign forum: "§ 1782 was not intended – and Microsoft cannot invoke it [–] as a vehicle to avoid or appeal an unfavorable discovery decision by" a foreign tribunal); *accord Kreke Immobilien, supra*, 2013 WL 5966916 at *6 ( "circumvention" factor weighed against § 1782 applicant who had not sought discovery in the foreign proceeding, because "§ 1782 was not intended as a vehicle to *avoid* . . . an unfavorable discovery decision from a foreign tribunal") (citations and internal quotations omitted; emphasis and alteration in *Kreke*); *Mare Shipping,*

### C. The Cumulative, Duplicative And Unduly Burdensome Nature Of The Discovery Mees Seeks Further Weighs Against The Application

Under *Intel*, this Court has the discretion not only to "trim[]" an "unduly intrusive or burdensome" § 1782 application, but also to "reject[]" it outright. 542 U.S. at 265. On the facts that now exist, the Application is cumulative, duplicative, and unduly burdensome within the meaning of Fed. R. Civ. P. 26(b)(2)(C). As those standards govern this Court's analysis here (*see Intel*, 542 U.S. at 266; *Mees*, 793 F.3d at 302), this factor weighs against Mees.

More specifically, in items 1 through 7 and item 9 of the subpoenas Mees seeks to serve here, she asks this Court to require Buiter to produce the *same* material she sought in items 1 through 8 of the Citi Subpoena. (*Compare* Dkt. # 4 at 28-32 *with* Case No. 1:15-mc-262, Dkt. # 4, Ex. 2 at 6-9). But although she vaguely mentions that documents "need only be produced to the extent they have not been produced by" Citi (Mees Br. at 8, 9), she fails to reveal the critical fact that she has already received from Citi over 1,500 pages of documents in response to those very requests. As all or most of those requests ask for material such as expense reports, business travel records, and records of calls from a business cell phone, it is difficult to see how Buiter would have it if Citi did not – and in fact Mees has already been told that in Buiter's view Citi's production largely (if not entirely) moots these requests. (*See* Koch Decl. ¶ 4 and Exh. 10).

Having now received this material from the entity in actual possession of it, we are at a loss to know what more Mees could possibly want. Nor does she explain it in her papers.[9] But in all events, her Application quite plainly seeks material that she now already possesses. As the

---

*supra*, 2013 WL 5761104 at *5 ("circumvention" factor weighed against § 1782 application where applicant had not sought the material at issue in the foreign court "because of the certain outcome of such a request") (internal quotations omitted); *Promnefstroy, supra*, 2009 WL 3335608 at *8-9 ("circumvention" factor weighed against § 1782 application where Dutch court had previously denied applicant's request for the same material).

[9] We emphasize as well that Mees's assertion that proof that Buiter was in the places where she stalked him is probative of anything is at best highly questionable.

Second Circuit made clear, this Court can (and, we submit, should) deny the Application "*in toto*" for this reason alone. *See Mees*, 793 F.3d at 302 n.18; *accord* Fed. R. Civ. P. 26(b)(2)(C).

Similarly, in item 8 of the subpoenas she seeks to serve here, Mees seeks various communications between herself and Buiter. But she fails to reveal that: (a) in her state court suit, Mees has already received *everything* Buiter has of the parties' email correspondence for a period of roughly a year prior to her arrest – amounting to over 2,500 emails – together with the certification of a forensics expert attesting to its completeness (Exh. 3)[10]; and (b) swearing that "a substantial portion" of her communications with Buiter "were to and from his Citi email account" (*see* Case No. 1:15-mc-262, Dkt. # 6, ¶ 32), Mees requested and received copies of all communications on Citi's servers that mentioned her in any way (including all communications to and from her) for the period from January 1, 2010 through the present.

Mees thus has a complete set of all of the parties' communications that could be produced (a) from Citi's servers (where she swore "a substantial portion" of the relevant communications would reside), for the period from January 1, 2010 to the present; and (b) from *any* source to which Buiter has access, for the period from July 12, 2012 until July 1, 2013 (the date of her arrest). Not only does Mees fail to explain why she could possibly need more (or, in particular, how additional communications from *more* than a year before her arrest will somehow negate what the record already shows); she does not even acknowledge that she already has so much of what she is requesting. Again, under both the Second Circuit's mandate and Rule 26, this is reason enough to deny her Application "*in toto*" on the ground that it has "the purpose of harassment." *See Mees*, 793 F.3d at 302 n.18; *accord* Fed. R. Civ. P. 26(b)(2)(C).

---

[10] Mees once again dissembles when she tells the Court that in the state court proceeding Buiter made a selective disclosure of only the material "that he believes most favors his defense." (Mees Br. at 2). Buiter made a *complete* disclosure for the period of time most relevant to the question of whether Mees was harassing and/or stalking him when he reported her to the police.

9

We emphasize as well that what Mees seeks are communications to which she was a party. She vaguely asserts that she lost her own records of those communications (although she has somehow been able to access them for use as exhibits in this Court when it has suited her to do so). But she gives no indication of what efforts she made to restore them. As a result, even if she could show that there are relevant communications that she does not have (something she has not even attempted to do), there is no reason to believe that it would be less burdensome for Buiter to troll through ancient email records in order to produce them than for her to obtain them through a forensic analysis of her own computers. This, too, warrants a denial of her Application. *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

Finally Mees asks this Court to order Buiter to appear for a deposition so that her counsel can question him at length – again for the purpose of seeing whether such questioning will give her evidence that he was not telling the truth when he told the police she had stalked and harassed him. But on the strength of the substantial documentary evidence Buiter has already produced, the New York state court where Mees actually brought her substantive claims stayed all discovery (including depositions) pending its determination as to whether those claims should be dismissed on the merits. Mees's Application thus now amounts to a request that this Court reverse the state court's order by (a) directing that Buiter be subjected to deposition so that *his stalker's* attorney can cross-examine him, at a time when (b) he has a right, both under state law and by court order, to be free from any such deposition unless and until the state court denies his pending motion to dismiss her claims. (*See supra* at 6-7).[11] In this context, the burden of what

---

[11] As well, if discovery proceeds, under New York law Buiter will have a right to complete Mees's deposition before she can commence his. *See generally* 44A N.Y. Jur.2d Disclosure § 234 (explaining that N.Y. CPLR 3106(a), under which only the defendant can serve a notice of deposition before the time to answer has expired, is grounded in the view that "in the absence of special circumstances, the defendant should be given the chance to examine first").

10

Mees requests clearly "outweighs its likely benefit" within the meaning of Fed. R. Civ. P. 26(b)(2)(C)(iii). It can and should be denied for this reason as well.[12]

### D. The Nature And Character Of The Proceedings Currently Underway Abroad Weighs Against Granting The Application

Finally, *Intel* directs this Court to consider the "nature of the foreign tribunal" and "the character of the proceedings underway abroad". 542 U.S. at 264. Mees seems to believe that this factor weighs in her favor unless Buiter can show that the Dutch court is affirmatively hostile to § 1782 assistance. We submit, however, that the correct analysis is much more nuanced and, like the other factors, weighs against Mees.

Mees has never argued that the Dutch court is not fully capable of overseeing discovery between the parties to its own proceedings. The fact that the Dutch court has never openly expressed hostility to § 1782 discovery does not lead inexorably to the conclusion that it would appreciate this Court's unsolicited "assistance" with respect to matters on which it has expressed no need for help. To the contrary, just as we would expect this Court to balk at the notion of a foreign court purporting to decide what discovery the parties to a proceeding here should be required to produce to one another, so too, we respectfully suggest, the Dutch court might very well and understandably view such action by this Court as unnecessary and meddlesome.

Of equal importance, the proceedings *currently* "underway" in the Dutch court are the applications that will be heard on October 2. After that hearing, the Dutch court will decide (a) whether to grant or deny Mees's discovery request; and (b) whether to stay the action pending a determination on the merits of her claims in the New York action (*see* Exh. 12 at 72-74). If the Dutch court grants Mees's request, its ruling may moot this Application in whole or in part. If it

---

[12] Moreover, if the Dutch court believes that witness examinations in advance of trial are appropriate, it will order them. (*See* Mees Br. at 4). Mees's request for an American-style deposition for the purpose of her Dutch suit is in that sense also "unreasonably cumulative or duplicative." *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

11

denies Mees's request, its ruling will likely weigh in favor of a denial of this Application based on the "circumvention" analysis. (*See supra*, n.8). And if it stays the Dutch action, Mees will have no current need for discovery – a situation that will favor denial of the Application.[13]

Because the Dutch court is thus poised to issue rulings that could impact the § 1782 analysis – and there is no reason to believe it needs or wants any assistance from this Court – the "nature and character of the proceedings underway abroad" weigh against the Application.

### III. ANY DISCOVERY SHOULD BE LIMITED AND RECIPROCAL

If the Court grants the Application, it should impose substantial limits and conditions. *In re Malev Hungarian Airlines*, 964 F.2d 97 (2d Cir. 1992) (cited with approval in *Mees*, 793 F.3d at 302 n.8), is instructive. There, the Second Circuit held that under § 1782 a district court may "require [the applicant] to prepare a discovery plan, make a showing that the discovery is not obtainable from some other source that is more convenient, less burdensome or less expensive, such as the [foreign] court, and then require the applicant to take the discovery plan before the [foreign] court for a determination as to which requests are relevant before coming to the United States district court for actual discovery." 964 F.2d at 102 (internal quotations omitted). Asking Mees to coordinate discovery in this manner will at least somewhat reduce the inefficiency she has created through her multiple proceedings. It will also allow the Dutch court to determine in the first instance what material is really relevant under Dutch law.[14]

Alternatively, the Court should direct the parties to (a) complete the "meet and confer" process that they have already begun, and (b) thereafter return to the Court for a resolution of any

---

[13] *See Certain Funds, Accounts, and/or Investment Vehicles v. KPMG, L.L.P.*, ___ F.3d ___, 2015 WL 4939544, *7 and n.11 (2d Cir. Aug. 20, 2015) (applicant under § 1782 must "establish that it will have some means of actually using the evidence in the foreign proceeding").

[14] This is not "condition[ing] discovery on an overt expression from the foreign court that it wants or needs the information," which the Second Circuit cautioned against here. *See Mees*, 793 F.3d at 303-04. Rather, it is a limit on discovery that the Second Circuit itself has approved.

12

remaining objections.[15] This process – commenced at the insistence of Mees's counsel – yielded what we thought was a substantial narrowing of her requests (*see* Koch Decl. ¶ 4 and Exh. 10), but in her current brief Mees continues to press those requests without any such narrowing. This unfortunately suggests that if discovery proceeds in this Court it will require further supervision. As well, any discovery should be subject to a confidentiality order along the lines of what the parties stipulated to in connection with the Citi Subpoena. (*See* Exh. 9; *accord* Dkt. # 9 at 21).

Finally, discovery should be reciprocal. Mees, however, does not reside in this District; according to her pleadings, she lives in Brooklyn. For the sake of efficiency and fairness – and to avoid increasing the number of separate courts supervising discovery here – any discovery should be conditioned on Mees's submission to jurisdiction and venue in this Court for any § 1782 application seeking discovery from her.[16]

## CONCLUSION

Ms. Mees's application should be denied in its entirety. If the Court disagrees, however, it should at a minimum limit and condition discovery in the manner set forth above in Point III.

Dated: New York, New York
       September 30, 2015

Respectfully submitted,

KATSKY KORINS LLP

By: /s/ Adrienne B. Koch
Adrienne B. Koch
Joseph Weiner
605 Third Avenue
New York, New York  10158
212-716-3225
akoch@katskykorins.com

and

QUIRK & BAKALOR, P.C.
By: Timothy J. Keane
1325 Franklin Avenue Plaza – Suite 250
Garden City, New York 11530
(212) 319-1000
tkeane@quirkbakalor.com

*Attorneys for Respondent
Willem H. Buiter*

---

[15] *See Ahmad Hamad Algosaibi & Bros. v. Standard Chartered Intern. (USA) Ltd.*, 785 F. Supp.2d 434, 439 (S.D.N.Y. 2011) (directing this procedure).

[16] *See Intel*, 542 U.S. at 262 ("When information is sought by an 'interested person,' a district court could condition relief upon that person's reciprocal exchange of information.").

13